IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


UNITED FOOD & COMMERCIAL
WORKERS UNION LOCAL NO. 911,
AFL- CIO & CLC,

                              Plaintiff,                        Case No. 3:05 CV 7024

            -vs-                                    MEMORANDUM   OPINION

SILGAN CAN COMPANY,

                              Defendant.

KATZ, J.

      This matter is before the Court on the motion of Defendant Silgan Can Company ("Silgan"
or "the Company") to dismiss or for summary judgment (Doc. No. 5). Plaintiff United Food &
Commercial Workers' Union Local No. 911 ("Local 911" or "the Union") has responded (Doc. No.
12), and Defendant has replied (Doc. No. 13). For the reasons set forth below, Defendant's motion
is granted.

**BACKGROUND**

      Silgan makes soup cans; its hourly employees are represented by Local 911. At issue here
are two collective bargaining agreements ("CBAs") between the parties: one running from
February 5, 2001, through February 8, 2004 ("the 2001 Contract"); and one running from February
9, 2004, through March 5, 2007 ("the 2004 Contract)." Both contracts require binding arbitration of
labor disputes.

      Prior to the 2001 Contract, Silgan had established a Quality Assurance ("QA") Department
to perform QA duties in two areas: Can Assembly and the Press Department. Over time, however,

advances in QA technology decreased the need for dedicated QA workers. During the 2001 Contract term, Silgan eliminated the QA Department, transferring its workers into other jobs and shifting their duties to existing "Line Tenders" and "Mechanics" in the Can Assembly and Press Departments.

The Union grieved these changes, and the parties eventually arbitrated the dispute, holding a hearing before Arbitrator Alan Walt on November 21, 2003. Over the following three months, the parties negotiated a new collective bargaining agreement, but did not discuss the effect, if any, that Arbitrator Walt's eventual ruling would have on the new agreement. They ratified the 2004 Contract on February 9, 2004.

Silgan claims the parties expressly agreed that under the 2004 Contract, Line Tenders and Mechanics would perform QA duties in the Can Assembly and Press Departments. Between February 10 and 17, 2004, plant managers explained this new arrangement to employees, provided revised job descriptions, and changed the manning in the Can Assembly area. The Union did not grieve the changes.

Then, on February 25, 2004, Arbitrator Walt ruled in favor of the Union on the grievance it had brought under the 2001 Contract. His ruling was based only on that contract; he never saw the 2004 Contract. Arbitrator Walt ordered Silgan to reestablish the QA Department and to return all QA work performed in Can Assembly and the Press Department, as well as in "any other areas in which Quality Control Inspectors exclusively performed quality checks," back to the QA inspectors. Silgan returned the QA inspectors to the Press Department, but not the Can Assembly area, maintaining that under the 2004 Contract, Line Tenders and Mechanics perform inspection duties in Can Assembly, so there is nothing for QA inspectors to do there.

2

The Union grieved Silgan's refusal to return Can Assembly QA duties to the QA inspectors. Before the grievance reached arbitration however, the Union filed this lawsuit, seeking to confirm Arbitrator Walt's award as applied to the Can Assembly Department.

**DISCUSSION**

The Union claims the Arbitrator's award governs the parties' relationship under the new 2004 Contract and seeks to confirm the award. The Company claims Arbitrator Walt's award applies only to the terms of the old 2001 Contract, and that the Union's grievance regarding the allocation of QA duties under the 2004 Contract must be submitted to arbitration anew. Silgan has therefore moved to dismiss the Union's complaint, or, in the alternative, for summary judgment. Because the Court looks to material beyond that contained in the pleadings, it will construe the motion as one for summary judgment.

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a

3

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require

4

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

*B. The Union's Application to Confirm the Arbitrator's Award*

"[W]here the parties have agreed to arbitrate disputes over the meaning of their collective

bargaining agreements, established labor policy significantly restricts the role of the federal

courts." *Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484, 491 (1st Cir. 1983) (citing *United*

*Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960)). Where a party brings an

action in federal court to confirm an arbitrator's award, the Court:

> [R]eview[s] the arbitrator's decision only to determine whether the arbitrator was
> "arguably construing or applying the contract and acting within the scope of his
> authority." If the arbitrator's award "draws its essence from the collective
> bargaining agreement," and is not merely the arbitrator's "own brand of industrial
> justice," the award is legitimate.

*Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 599 (6th Cir.

1997) (quoting *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 37-38 (1987) and

*Enterprise Wheel & Car Co.*, 363 U.S. at 597). However, judicial economy counsels against

confirming an award where it "does not affect the present relations of the parties." *Derwin*, 719

F.2d at 492 (internal quotation omitted).

Where an arbitrator's award conflicts with a newly negotiated collective bargaining

agreement that was not before the arbitrator, the contract, not the award, controls the relations of

the parties during the term of the new contract. *See Int'l Chem. Workers Union, Local No. 227 v.*

*BASF Wyandotte Corp.*, 774 F.2d 43, 45-46 (2d Cir. 1985); *Local 144, Hotel, Hospital, Nursing*

*Home & Allied Health Service Union v. Metro. Jewish Geriatric Ctr.*, 94 L.R.R.M. (BNA) 3151,

3151-52 (S.D.N.Y. 1977). In each of those cases a union and a company arbitrated a dispute, and

subsequently entered into a new collective bargaining agreement that was not considered by the

5

arbitrator and that contained terms affecting the subject of the original dispute that were materially different from those in the CBA under which the dispute arose. *BASF Wyandotte Corp.*, 774 F.2d at 44; *Metro. Jewish Geriatric Ctr.*, 94 L.R.R.M. at 3151-52. In each case, the courts found the terms of the new contract controlled during the time that the new contract was in effect. *BASF Wyandotte Corp.*, 774 F.2d at 45-46; *Metro. Jewish Geriatric Ctr.*, 94 L.R.R.M. at 3151-52.

In *BASF Wyandotte*, a janitor grieved his discharge. 774 F.2d at 44. The company and the union, representing the janitor, arbitrated the grievance. *Id.* On May 5, 1984, the arbitrator ruled in favor of the union, ordering the company to reinstate the janitor. *Id.* The agreement under which the dispute was arbitrated expired on August 31, 1984, and the parties ratified a new collective bargaining agreement on September 1, 1984, under which all janitorial duties were transferred to non-union positions. *Id.* at 45. The company agreed that the arbitrator's decision required it to pay the janitor back pay from the date it discharged him up to and including August 31, the date the old contract expired. *Id.* at 44-45. However, the company claimed that it was not required to reinstate the janitor or pay him back pay for any time under the new contract. *Id.* at 45. The Second Circuit agreed, finding that:

> Reinstatement would have placed Walker [the janitor] in a position similar to that of the other janitorial staff at BASF. Therefore, when the new collective bargaining agreement was negotiated by the Union and BASF, Walker was subject to any changes agreed to by the parties. The arbitrator's order of reinstatement did not guarantee Walker 'perpetual job security'; it merely restored him to his status as a janitor under the old collective bargaining agreement with the same rights as any other janitor. Walker was still subject to any changes that the parties negotiated in the new agreement.

*Id.* at 45-46 (citation omitted).

Likewise, in *Metropolitan Jewish Geriatric Center*, the defendant discharged a nurse, whose union took the grievance to arbitration. 94 L.R.R.M. at 3151-52. Before the arbitrator ruled, the nurse's position was removed from coverage under the collective bargaining agreement. *Id.*

6

Subsequently, the arbitrator ruled in her favor, ordering the defendant to reinstate her. *Id*. All parties and the court agreed that, despite the arbitrator's award, the intervening change in the nurse's job classification had rendered her an at-will employee that the defendant was free to discharge. *Id*. The court held that paying her one day's pay, plus the back pay leading up the change in her job classification, complied with the arbitrator's award. *Id*. It is clear, therefore, that a new CBA with materially different terms supercedes an arbitrator's award that was based on a previous contract.

The Second Circuit in *BASF Wyandotte* additionally concluded, citing *Derwin*, that the discharged janitor's right under the *new* contract to be rehired was a "new and separate issue" not addressed by the arbitrator, and one that an arbitrator, and not the courts, should determine. 774 F.2d at 46. As the First Circuit in *Derwin* explained, "the courts have often declined to rule that an arbitral award is binding in a later, factually similar context, reasoning that *the precedential effect to be accorded a past award is a matter for the arbitrator*." *Derwin*, 719 F.2d at 491 (emphasis added).

"The courts, moreover, have carefully scrutinized suits to 'enforce' past awards where the facts suggest that the nominal enforcement proceeding is, in truth, an attempt to extend the award to a new, previously unresolved dispute." *Id*. Indeed:

> Only where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure. . . . [U]nless 'it is beyond argument that there is *no material factual difference* between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion,' the case must go to fresh arbitration rather than to the court for judicial enforcement.

7

*Id.* (citations omitted) (emphasis added) (quoting *Boston Shipping Ass'n v. Int'l Longshoremen's Ass'n.*, 659 F.2d 1, 4 (1st Cir. 1981)).

The foregoing makes it clear that, in this case, the 2004 Contract governs the allocation of QA duties during its term, despite the pendency, at its ratification, of arbitration proceedings that arose under the 2001 Contract. The Court finds it arguable that there is a material difference between the 2004 Contract and the 2001 Contract regarding the allocation of QA duties, making the resolution of the parties' present dispute appropriate for fresh arbitration and inappropriate for resolution by this Court. Though the Union claims it negotiated no changes to the QA Department, Silgan points to several facts making colorable its position that the 2004 Contract changed the allocation of QA duties.

First, Silgan points out that for the 2004 Contract, Section 5.11 of the CBA was amended to add the sentence, "[i]n Can Assembly, Mechanics will be responsible for the efficient operation of a three piece can line." (Doc. No. 5-2, ¶ 11; Doc. No. 5-3, pp. 8-9). The Company claims this change was made to remove a prior contractual bar prohibiting Mechanics from performing inspection duties. (Doc. No. 5-2, ¶ 11 & n.1).

Second, Silgan claims the Union submitted proposed job descriptions for Line Tenders and Mechanics that would have required them to perform "[q]uality inspection procedures at the scheduled intervals, [and] enter the corresponding data into a Windows based computer program or appropriate forms." (Doc. No. 5-2, ¶ 9; Doc. No. 5-3, pp. 4-6).

Third, the Company points to the revised job descriptions it issued and the manning changes it made after the 2004 Contract was ratified, and the lack of objection by the Union. Although the Union's silence might be explained by its belief that the pending grievance covered the changes, that is an issue of fact that the arbitrator, not this Court, must resolve.

8

Finally, Arbitrator Walt's decision that Silgan could not unilaterally eliminate the QA Department hinged in part on the 2001 Contract's express acknowledgment of that Department. The record before this Court does not indicate whether that portion of the CBA was changed in the 2004 Contract. In any event, "[t]he courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) (footnote omitted).

As *Derwin* instructs, because it is arguable that the parties made material changes to the 2004 Contract regarding the allocation of QA duties, the parties' dispute over the allocation of those duties now and throughout the remainder of the 2004 Contract term must go to fresh arbitration. It would be inappropriate for this Court to rule on that issue in the first instance. In addition, because the award the Union seeks to confirm does not affect the present relations of the parties, judicial economy urges the Court to refrain from confirming Arbitrator Walt's February 25, 2004, award.

## CONCLUSION

Based on the foregoing, Defendant Silgan Can Company's Motion for Summary Judgment (Doc. No. 5) is granted.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
SENIOR  U. S. DISTRICT JUDGE